EDWARD SHOCKLEY and MAE GERTRUDE SHOCKLEY and JOHN C. ECKERT and GAIL BOND ECKERT, Appellants, v. ABBOTT SUPPLY COMPANY, a corporation of the State of Delaware, Appellee.

(*October* 31, 1957.)

SOUTHERLAND, Chief Justice, WOLCOTT, Justice, and MARVEL, Vice Chancellor, sitting.

*Stewart Lynch* (of Hastings, Lynch and Taylor) and *Daniel J. Layton, Jr.*, for appellants.

*James M. Tunnell, Jr.* (of Tunnell and Tunnell) for appellee.

Supreme Court of the State of Delaware, No. 8, 1957.

SOUTHERLAND, C. J.:

The principal question in this case is whether a sale in Sussex County for nonpayment of county taxes extinguishes mortgage liens antedating the tax lien.

The facts are these:

In 1905 Fenwick Island Land Company, a Delaware corporation, acquired title to a tract of land in Sussex County comprising that portion of Fenwick Island within the State of Delaware. In 1908 the corporation executed a mortgage to Philip Moore and others reciting a debt of $5,000. In 1935 the land (or a portion of it, including the lands here involved) was sold at public sale for nonpayment of county taxes for the sum of $50. The sale was confirmed and in 1936 the Receiver of Taxes gave a deed to the purchaser, William P. Short. Defendants derive their several titles from Short.

On September 9, 1938, N. Walter Suplee became the owner, pursuant to various assignments, of the $5,000 mortgage above mentioned. On April 7, 1939, Suplee, who was then President of Fenwick Island Land Company, began foreclosure proceeding on the mortgage. Affidavit of demand, alleging the debt due to be $1,950, was filed and judgment was obtained. On September 9, 1939, the land was sold at public sale to Suplee for $3,100, and on October 10 the Sheriff gave him a deed. In 1954 Abbott acquired from Suplee his title to the lands in suit.

On January 6, 1955 Abbott brought an action of ejectment against defendants. Defendants asserted superior titles, based on the tax deed to Short. Depositions were taken and exhibits were introduced. Cross motions for summary judgment were filed. The court below granted Abbott's motion and denied the defendants' motion. The defendants appeal.

In the court below defendants made numerous contentions in support of their claim of title. These contentions are renewed here. We agree with the court below that defendants' case is reducible to three questions. The first is this:

### I. *Did the tax sale extinguish the mortgage lien?*

■ This is the most important question.

Revised Code of 1935, § 3351, 25 *Del. C.* § 2901 et seq., provides in part:

"All taxes laid and imposed by the Levy Court of a County, or by the State for its own purposes, or by any school district united or consolidated or incorporated school district or incorporated town or city in this State except as in their charters otherwise provided, shall be and constitute a lien upon all the real estate of the taxable against or upon whom such taxes are laid or imposed, of which such taxable was seised at any time after such taxes shall have been levied and imposed, situate in the County in which such taxes are assessed and collectible, and such lien shall have preference and priority to all other liens on such real estate created or suffered by the said taxable, although such other lien or liens be of a date prior to the time of the attaching of such lien for taxes."

This statute on its face is clear enough. The county tax lien is made senior to prior liens created by the taxable. It derives from an act of 1877 (15 *Del. L.* c. 476) and is a general statute, applying throughout the State. It does not, however, expressly deal with the question whether, upon a sale of land for non-payment of such taxes, the prior liens are extinguished.

Two statutes applicable only to Sussex County have considerable bearing upon this question.

Revised Code of 1935, § 1445, 9 *Del. C.* §§ 8773-8775, provides in part:

"Every sale of lands and tenements shall be returned by the Receiver of Taxes and County Treasurer to the Superior Court, in and for Sussex County, at the next term thereof, and the Court shall inquire into the circumstances, and either approve said sale or set it aside. If it be approved, the Receiver of Taxes

and County Treasurer making the sale shall make a deed to the purchaser which shall convey the title of the taxable, or of his alienee, as the case may be; * * *."

Revised Code of 1935, § 1450, 9 *Del. C.* § 8779, provides:

"After satisfying the tax due and the costs and expenses of sale from the proceeds of sale, the amount remaining shall be paid at once to the owner of the land, or upon the refusal of said owner to accept the same, or if the owner is unknown or cannot be found, the amount remaining shall be deposited in some bank in the county either to the credit of the owner, or in a manner by which the fund may be identified."

The first quoted statute can be traced back to the *Code of* 1829, p. 380. The phrase "title of the taxable" appears in § 214 of the 1852 Code.

We note that the Sussex County statutes not only provide for a deed conveying "the title of the taxable", but also fail to provide for payment from the proceeds of sale of any liens against the land; the amount remaining after satisfying the tax and paying the costs is to be paid "to the owner" of the land. It is of some interest to note that the comparable county tax statute relating to New Castle County contains a provision for payment to lien-holders served with notice of the sale. Revised Code of 1935, § 1355, 9 *Del. C.* § 8757.

Now, if the matter stood there, the question of the construction of § 3351 of the 1935 Code might not be free from difficulty. But the court below found as a fact that from time immemorial the phrase "title of the taxable" in § 1445 and its forerunners has been construed in Sussex County to mean that the Sheriff sells and conveys only the interest of the taxable at the time of the sale, that is, if the land is encumbered by a lien the purchaser takes title subject to the lien. The court below said (128 *A.* 2d 796):

"This has been the accepted law and practice in Sussex County for more than a century and it has become a recognized rule of property affecting land transactions and land titles."

The court referred to various circumstances supporting this conclusion.

First, the bid of $50 for 300 acres of land assessed at $2460 reflected the prevailing practice. To this we may add the circumstance that on the mortgage foreclosure sale 238 acres of that land brought $3100.

■ Second, the provisions of 9 *Del. C.* § 8704, and the revisers' note thereto, expressly recognize the accepted practice. That section provides:

"Liens or encumbrances against lands and tenements sold for taxes by the Receiver of Taxes and County Treasurer of any county under the provisions of this chapter which were valid and subsisting liens or encumbrances at the time of the sale for taxes (other than the lien for the taxes for the collection of which such sale is made), shall not be discharged or anywise affected by such sale, and such sale shall be subject to such liens or encumbrances."

The revisers' note to this section reads:

"The provisions as originally enacted, while technically applicable to Kent County only, are by this revised section, made applicable in all counties to conform with accepted law and practice."

Thus, the accepted practice in Sussex County has been codified as the law of the State. The tax lien retains its priority (25 *Del. C.* § 2901), but a sale to enforce that lien does not extinguish other liens.

Third, the court below relied on the unreported case of *Derrickson v. Baylis, et al.,* No. 4, Oct. T., 1935, Sussex County. In that case it appeared that land had been sold under a tax sale to Benjamin Ableman. Subsequently, Addie T. Derrickson foreclosed a mortgage on the land given prior to the tax sale, and bought the property at the mortgage foreclosure sale. She sought to have the records of the County Board of Assessment

changed to reflect her title. That Board having refused her request, she brought *mandamus*. In awarding the writ, Chief Justice Layton included the following recital in his order:

"* * * and argument of counsel having been heard, and the Court being of the opinion that by Ch. 82, Vol. 28, *Laws of Delaware*, as amended, a purchaser of lands and tenements at a tax sale conducted by the Receiver of Taxes and County Treasurer, acquires the title of the taxable and subject to the liens of record against the property sold."

This express recognition of the accepted construction of the statutes governing tax sales in Sussex County is convincing evidence of the correctness of the holding in this case.

■ Defendants insist that there was no evidence before the court below that such a construction has existed for a long period of time. It is evident to us that the court took judicial notice of a construction of the statutes by the bar of Sussex County and by purchasers at tax sales that had existed for a long period of time. Such a construction was reflected in the court's own records. As the court found, it had crystallized into a rule of property. It was confirmed by the Superior Court in the *Derrickson* case. Such a generally accepted construction by the bench and bar of Sussex County constitutes a sound basis for the holding below. Crawford, *Statutory Construction*, § 222, and cases cited. Its application here is particularly appropriate because titles to land, as the court below observed, have come to depend upon it.

Defendants build a series of arguments on what they insist is the clear and unambiguous wording of the priority statute (*Revised Code of* 1935, §3351, first above quoted). Many authorities from other jurisdictions are cited to the effect that a sale under such a statute not only divests the owner of all his title but grants to the purchaser a new title, derived from the sovereign, and extinguishes all liens and encumbrances on the land.

It is unnecessary to consider these cases. If the correctness be granted, our conclusion is not changed.

Defendants also insist that *Derrickson v. Baylis* has been overruled by *Pottock v. Mellott,* 2 *Terry* (41 *Del.*) 361, 22 *A.* 2d 843, which holds that a tax sale under the Monition Tax Statute relating to the City of Wilmington passes the fee of the land and not merely the estate of the former owner. We think not. The opinion in the *Pollock* case was written by the same judge who made the order in the *Derrickson* case. The Wilmington Monition Tax Statute differs from the Sussex County statutes in important particulars. The monition is addressed not only to the taxable, but to lienholders; and the statute contemplates that the Sheriff shall apply the surplus proceeds of the sale to the payment of liens. See 36 *Del. L.* pp. 412, 416. Moreover (and this is the important distinction), the *Pollock* case presented no question of a settled rule of construction that had ripened into a rule of property.

Some subsidiary arguments are also advanced. It is unnecessary to consider them in detail, for they are all answered by the settled construction of the Sussex County statutes.

We hold that the tax sale in this case did not extinguish the mortgage lien.

The second question is:

II.  *Was the judgment in the mortgage foreclosure proceeding void for lack of jurisdiction of the court over the corporate defendant, Fenwick Island Company?*

Defendants assert that the service of the writ was wholly ineffectual to confer jurisdiction over the corporation. This contention is founded upon the Sheriff's return, which reads:

"Summons served personally on Fenwick Island Land Company (a corporation existing under the laws of the State of Delaware) by acceptance of service by Charles L. Harmonson

Secretary and Resident Agent for the Capital Trust Company authorized by law to accept service for the Fenwick Island Land Company (a corporation existing under the laws of the State of Delaware) this the 15th day of April A.D. 1939 So ans.

Grier H. Minner.

Sheriff"

It is conceded that this return is improperly worded. The return should have stated that the writ had been served by delivering a copy thereof to Charles L. Harmonson, secretary of Capital Trust Company, the corporate resident agent of the defendant, the president of the defendand residing out of the State. See the statute governing service of process upon Delaware corporations, Revised Code of 1935, § 2080, 8 *Del. C.* § 321.

But the return does not affirmatively show that the service was improper. It simply fails to show the fact that the president resided out of the State, and fails to describe the Capital Trust Company as corporate resident agent of the defendant. It also fails to show that a copy of the writ was left with the resident agent. And it ineptly speaks of "personally" serving a writ upon a corporation. But the facts are that the president did reside out of the State and that the Capital Trust Company was the corporate resident agent of the defendant. The return was irregular, but the service was not void. The distinction between a return showing affirmatively that the statute was not complied with and a return that simply fails to set out all the requisites of legal service is well settled. See *Gibbons v. Mason*, 1 *Harr.* 452; 1 *Woolley on Delaware Practice*, § 201. The return could, of course, have been amended, on timely application to the court, to show the facts. I *Woolley on Delaware Practice*, § 206 *et seq.* But the service was not void, and the return would not have been quashed if the facts had been shown. The court acquired jurisdiction over the defendant, and the return cannot now be attacked collaterally, since the want of jurisdiction is not manifest from the record. *Frankel v. Satterfield*, 9 *Houst.* 201, 206, 19 *A.* 898; 31 *Am. Jur.*, "Judgments", § 602. The court below so held, and we agree.

### III. *Was the mortgage obligation void?*

Defendants in this proceeding seek to litigate issues relating to the validity of the mortgage obligation. They contend that the execution and delivery of the mortgage was unauthorized; that it was given without consideration; that the assignment to Suplee was without consideration; and that there was nothing due on the obligation when the mortgage was foreclosed.

The court held that these issues could not be collaterally raised in this proceeding, since the defendants, as terre-tenants of the land, were bound to litigate the validity of the mortgage in the foreclosure proceeding. They were in privity with the defendant in that proceeding, for their titles were derived from the purchaser at the tax sale, who succeeded to the title of the Fenwick Island Corporation. Hence they are bound by the judgment in that proceeding. 37 *Am. Jur.*, "Mortgages", § 549. It was, of course, unnecessary to make the defendants parties to the foreclosure. The only necessary defendant in such a proceeding is the mortgagor or his personal representative. 2 *Woolley on Delaware Practice,* § 1360; *Seals v. Chadwick,* 2 *Penn.* 381, 45 *A.* 718.

We hold that the court below was right in declining to permit defendants to attack the validity of the mortgage.

The Eckert defendants attempt to make some point of the fact that after they had made the highest bid at the foreclosure sale, and had then withdrawn their bid, the Sheriff reopened the bidding. No one objected to this and the bidders had not dispersed. These defendants cannot now avoid the sale on that ground. 37 *Am. Jur.*, "Mortgages", § 718.

The foregoing discussion disposes of the three questions raised below and reargued here.

In the defendants' brief before this Court, and at the argument, an additional question was suggested, *viz.*: whether there was before the court below an issue of fact raised by the

answer of the Shockley defendants. Their answer pleads adverse possession of their land. It is now conceded that this issue, as such, was not discussed in the brief filed below on behalf of the Eckert defendants. Nor was it argued, as a reading of the transcript of the oral argument shows. In fact counsel for the Shockley defendants filed no brief and made no argument. It is suggested that one of the briefs on behalf of the Eckert defendants mentioned the fact that the Shockleys went into possession of their land in 1932. Such a casual statement by counsel for the Eckerts cannot possibly be treated as a serious attempt to argue below that there was an issue of adverse possession in the case as to their co-defendants. The point was never raised before the trial court. It comes too late here. *Cottrell v. Pawcatuck Co., Del.,* 129 *A.* 2d 263.

We have considered all the points raised and discussed at length in defendants' briefs. We are in entire accord with the opinion of the court below, and the judgment is affirmed.