160 A.2d 590 (1960)
Nathan Walter SUPLEE, George J. Schulz and Mary D. Schulz, L. P. Faucett, Inc., a corporation of the State of Delaware, Madison M. Gray, Carl Springer, Inc., a corporation of the State of Delaware, suing In their own behalf and in behalf of all others similarly situated, Plaintiffs,
v.
John P. ECKERT and Gail Bond Eckert, Defendants.
Court of Chancery of Delaware, Sussex County.
April 6, 1960.
*591 James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.
John P. Eckert and Gail Bond Eckert, pro se.
SEITZ, Chancellor.
Plaintiffs brought this class action on June 24, 1955 to remove a cloud on title to land which members of their class own of record in Fenwick Island. The members of the class are those who claim ownership through a mortgage foreclosure proceeding, the validity of which has been upheld by the Delaware Supreme Court. Shockley v. Abbott Supply Company, 11 Terry 510, 135 A.2d 607. The court has heretofore disposed of many of the legal issues in this case. See Suplee v. Eckert, Del.Ch., 152 A.2d 289.
This is the decision after final hearing on the defendants' counterclaim seeking a declaration that they own the land in question by adverse possession.
The plaintiffs proved their legal title to the lands in question and rested. The defendants then undertook to discharge their burden of proving title by adverse possession.
In their brief defendants say that they do not base their adverse possession on record title. They contend that their adverse possession started long before their record title was obtained by their tax deed in 1939, which deed was held to be inferior to the deed obtained by plaintiffs through the mortgage foreclosure, Shockley v. Abbott Supply Co., above. It is therefore unnecessary to decide whether their 1939 tax deed to the land in question has any independent significance on the issue of adverse possession. Defendants claim that they have successfully maintained their adverse possession from 1931 up to the present time. Plaintiffs assert several defenses to the claim. What are the pertinent facts?
I shall first deal with the defendant, John Eckert, because he lived at Fenwick Island before his present wife, the other defendant, came there. The evidence shows that John Eckert spent a part of the year 1931 at Fenwick Island. However, he did not purchase lots 1 to 10 in Block 75, which he admittedly still owns, until 1932. He proceeded to erect a house on some of these lots.
I am satisfied that sometime after 1931 and before June of 1935, John Eckert built some sort of a structure to house a car. I believe this structure was placed somewhere on lot 12 in Block 75 and that he used lot 11, inter alia, as a driveway. It is not clear whether the defendant's use of lots 11 and 12 was with knowledge that it was not his land. There is room for the belief that he may have felt that lots 11 and 12 were part of the land he purchased. I say this because of the misplaced position of the road at the time. Nevertheless, if the requisite adverse possession existed, defendants' claim is not defeated by the fact that the encroachment was innocent. Plaintiffs' counsel so concedes. See 6 Powell on Real Property § 1015; Marvel v. Barley Mill Road Homes, 34 Del.Ch. 417, 104 A.2d 908.
I therefore conclude that the defendant, John Eckert, commenced an open, notorious and hostile possession of lots 11 and 12 in Block 75 some time prior to June of 1935, or more than 20 years before this action was commenced. This conclusion is consistent with plaintiffs' testimony that the lumber for a garage was not purchased until the latter part of 1935. I so say because I believe the defendant had some sort of a garage structure on the land in question prior to the erection of the garage in late 1935. Moreover, I believe the "new" garage was placed in the same relative position as the prior structure.
*592 Defendants have the burden of showing that their adverse possession existed for at least 20 years prior to the commencement of this action in June 1955. I believe the requisite possession of lots 11 and 12 of Block 75 continued from some date prior to June 1935 until the date the suit was commenced unless, as plaintiffs contend, the running of the period was broken when, in 1952, a member of the class of which plaintiffs are a part, caused the area in question to be bulldozed preparatory to advertising lots for sale.
There is no doubt that bulldozing was commenced in 1952 but I am satisfied that the bulldozing did not touch lots 11 and 12 in Block 75. My conclusion is based in part upon the testimony but principally upon my view of the area in question and the condition of the land and vegetation. Consequently, I do not consider that the bulldozing constituted an interruption of defendants' claim to lots 11 and 12. Other evidence of interruption is too ephemeral to support the conclusion that defendants' hostile possession was interrupted.
I therefore conclude that the defendants discharged thier burden of proving that they established their title to lots 11 and 12 in Block 75 by adverse possession.
I next consider whether the defendants sustained their claim to title by adverse possession to the other large portions of Fenwick Island sold under the mortgage foreclosure and located west of the lighthouse.[1] In disposing of this issue it is important to have in mind the type of land involved. It abuts in part on the Assawoman Bay. It is low land and much of it either is covered by water or is in a marshy condition. The part which is fairly dry is largely covered with native vegetation. Some of it is of a height which indicates that it hasn't been touched in years. Other portions show the effect of the admitted bulldozing activity which took place in 1952 and later. The defendant, John Eckert, did not testify particularly concerning the broad expanse here discussed. His wife, the defendant Gail Bond Eckert, sustained the laboring oar in attempting to show that she adversely possessed this land for the requisite period. She testified that she planted certain bushes, trees and other items at various points on the land in dispute. She also claimed that she cultivated some small parts of it and that she used it for other "private" enterprise purposes.
Based upon my view of the area and in the light of the testimony I am satisfied that the defendant did not perform acts on the land in question for 20 years of a character which constituted notice to the record owner and the public that the defendants were in effect asserting an open, notorious and hostile claim to such land. Assuming that defendant, Mrs. Eckert, did the things she says she did, I do not believe they were sufficiently significant to warrant the conclusion by a reasonable person that she was occupying the land adversely to the true owner. In other words, I believe that the defendants' proof failed to show that their possession of the area here discussed was to the exclusion of the interest of the true owner for the requisite period. Indeed, if further support for my conclusion were needed it would be found in the fact that defendants' possession was not exclusive because other members of the public were using parts of the disputed area for much of the same period without recognition of the claimed rights of the defendants.
I therefore conclude that the defendants have not sustained their burden of proving title to the area in question based upon their claimed adverse possession.
In order to implement my decision I believe that it would be desirable to cause a map showing the entire area embraced by *593 my various decisions to be prepared and recorded. The final judgment could then refer to the lot numbers or other symbols thereon in identifying the lands covered by the judgment. If this is not feasible at least Exhibit 6 might be recorded. The final judgment should embrace all the decisions covered by my prior orders. Perhaps it should be recorded in the Office for the Recording of Deeds. It may also contain appropriate injunctive relief.
I emphasize again for the benefit of the parties and the title-searching Bar that this court's judgment does not cover any lands which were not subject to the mortgage at the time it was foreclosed.
Order on notice.
NOTES
[1] Other lands sold in the foreclosure proceedings are covered by my prior decisions.