**WILMINGTON TRUST COMPANY, a corporation organized and existing under the laws of the State of Delaware, Plaintiff,**

v.

**William J. CARATELLO and Eileen Caratello, his wife, Richard Evans, Jr., and Steven Goldstein, Defendants.**

Superior Court of Delaware, New Castle County.

Submitted March 10, 1978.

Decided April 6, 1978.

Michael N. Castle of Schnee & Castle, Wilmington, for plaintiff.

Steven M. Goldstein, pro se.

Joseph J. Farnan, Jr., New Castle County Dept. of Law, Wilmington, for intervening defendant.

TAYLOR, Judge.

Plaintiff obtained default judgment in this action to foreclose a mortgage in favor of plaintiff given by defendants William J. Caratello and Eileen Caratello in 1966 covering a property located in Knollwood, New Castle County, Delaware. Steven Goldstein was made a party defendant in an effort to satisfy the requirements of *Brown v. Federal National Mortgage Association,* Del. Supr., 359 A.2d 661 (1976) and *Gelof v. First National Bank of Frankford,* Del.Supr., 373 A.2d 206 (1977), since he was the successful bidder at a sheriff's sale at which the mortgaged property was purported to be sold to satisfy a lien of New Castle County for sewer service charges. Defendant Goldstein has moved to vacate the default judgment as to him and for relief on the ground that the sale to recover on the sewer lien discharged the property from the lien of the mortgage. Since this case put in issue the validity of an action of New Castle County, it has intervened as a defendant.

## I

On July 13, 1976, County Council of New Castle County adopted a resolution which

undertook to levy delinquent sewer service charges as an assessment on certain properties, including the property involved here, and to authorize monition sale of those properties.

9 Del.C. § 2211 provides:

"(a) In the event that any service charge is not paid as and when due, the unpaid balance thereof and any interest accrued thereon shall be a lien on the parcel of real property with regard to which the service charge was made. The lien shall be superior and paramount to the interest in such parcel of any owner, lessee, tenant, mortgagee or other person, except the lien of taxes."

By virtue of this provision, the lien for the unpaid sewer service charges was "superior and paramount" to the interests of the owner and/or mortgagee of the property.

9 Del.C. § 2211(b) provides that where the service charge remains unpaid for five years proceedings to enforce the lien shall be taken. It provides:

"(b) If any service charge or any part of a service charge remains unpaid at the end of 5 years after the due date the county government shall cause to be brought proper proceedings for the enforcement of the lien and levy the service charge as an assessment with interest thereon accrued, . . ."

The procedure which the resolution undertook to authorize and which was followed in the subsequent sale of the property was the monition method set forth in 9 Del.C. §§ 8721–32. Since most of the sections relating to the monition method refer to taxes and assessments, it will be assumed that the monition method is available for collection of assessments as well as taxes.[1]

The contention in support of the sale is that the service charges which brought about the sale were assessments within the monition statute. It is contended that 9 Del.C. § 2211(b) authorizes a service charge which has remained unpaid after 5 years to be enforced "as an assessment" and hence makes available the monition method. The language relied on directs that the county government "shall . . . levy the service charge as an assessment." Since the section calls for specific governmental action, it must be concluded that in the absence of such action the charge is not an "assessment".

9 Del.C. § 1151 provides:

"All actions of the county government which shall have the force of law shall be by ordinance."

The following sections prescribe a procedure to be followed in the adoption of ordinances including certain formal language and notice, public hearing and publication. 9 Del.C. § 1152 and § 1156. The statute does not define the phrase "which shall have the force of law."

■ The words "force of law" and "effect of law" have been used interchangeably, and particularly where the action is by a legislative body. *Helvering v. Winmill,* 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938); *Helvering v. R. J. Reynolds Tobacco Co.,* 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 (1939); *Old Mission Portland Cement Co. v. Helvering,* 293 U.S. 289, 293, 55 S.Ct. 158, 160, 79 L.Ed. 367 (1934). Cf. *Koenig v. Flynn,* 258 N.Y. 292, 179 N.E. 705 (1932). The words "force of law" or "effect of law" are synonymous with having a legally binding effect. *Ibid.* They encompass that which has a direct force, impact or compulsion upon person or property. Any action which directly affects personal liberty or private property or which affects personal or property rights or restrains or compels action of members of the public has the force or effect of law.

■ In this instance, the statute prescribes the procedure in detail. The service charge ripens into an enforceable assessment only after it has remained unpaid for five years and after it is levied as an assessment by the county government. No ordinance has provided for the levying of this assessment. This sale rests upon action of County Council to effectuate a levy under 9 Del.C. § 2211(b). I conclude that when

---

1. 9 Del.C. § 8721 refers only to taxes.

County Council undertakes to levy an assessment pursuant to § 2211, the action has the force or effect of law. According to the statute, the levy of the assessment has the effect of subjecting property to processes culminating in its sale and conveyance. The action here was not merely directing a county officer to institute a particular proceeding. This action by County Council was an action having the force of law.

 The action taken here was by resolution. A resolution is an expression of opinion or a ministerial act. 1 *Antieau's Local Government Law,* pp. 4–28, –29, § 4.14.* It is normally available for matters which are ministerial or administrative business of the government. 5 McQuillin, *Municipal Corporations,* pp. 56–7, § 15.06. To the extent that the resolution here activated action by a member of the county government, the procedure was appropriate. Insofar as it undertook to meet the statutory requisite of § 2211 for subjecting private property to the ultimate sale process, it failed to meet the statutory formality of an ordinance and was inadequate. Because of the failure to act by ordinance, the service charges have not been constituted as "assessments".

This does not mean that an ordinance is generally a prerequisite to the sale of private property for taxes and assessments. The statute involved here contains requirements which are not found generally, and hence this decision applies to the process under § 2211 and not to the collection of taxes and assessments according to other statutes.

It is also contended that the service charges qualify as "taxes" under the monition statute. Consideration of pertinent statutory word usage is called for. The first consideration is in 9 Del.C. § 2211(a) which gives superiority to the lien of the service charge "except the lien of taxes." Similar distinction is found in 9 Del.C. § 2212(a) differentiating between the lien

for sewer permits and the lien of taxes. In connection with the authorization to issue bonds based upon the faith and credit of the county, the statute specifically authorizes the county government to "levy an ad valorem tax . . . upon all property taxable by the County." 9 Del.C. § 2206. In contrast, § 2209(a) authorizes the county government to "collect rents, rates, fees or other charges (in this chapter sometimes referred to as 'service charges')". The definition of "service charges" in § 2201 states that that phrase means "rents, rates, fees or other charges charged or collected under § 2209 of this title." It is clear that the draftsman of that chapter understood and discriminatingly used the words "sewer charges" and the word "taxes" as having separate meanings.

 In contrast to the language of 9 Del.C. Chapter 22, is the language of 9 Del.C. Chapter 23 dealing with sanitary sewer districts. 9 Del.C. § 2317 provides that annual assessments "shall be collected by the county government as are other county taxes." It further provides:

"The properties against which such assessments are levied shall be liable for the payment of the assessments in the same manner as they are liable for other county taxes." [2]

The same treatment is provided in 9 Del.C. §§ 531 and 577 for assessments for suburban community improvement. A further, but less significant consideration, is the principle that statutes relating to taxation and collection of taxes should not be given breadth greater than that which is clearly apparent from the wording of the statute. *Riley v. Banks, supra.*

 I conclude that the draftsman of 9 Del.C. Chapter 22 was cognizant of the technical distinctions between service charges, assessments and taxes and used those terms perceptively. Hence, I conclude that a service charge under Chapter 22 was not intended to be a tax and that it

---

* Similarly, 4 *Antieau's Local Government Law,* pp. 59–60, § 33.01.

2. Similar language has been held to authorize utilization of the procedures available for sale of property for county taxes. *Riley v. Banks,* Del.Supr., 62 A.2d 229 (1948).

could become an assessment only upon valid levy.

The conclusion from the above considerations is that there is no valid legal basis for the utilization of the monition method to sell the property in question for collection of the sewer service charges.

## II

■ The next question is what the effect was of the purported sale of the property by the sheriff notwithstanding absence of a valid monition proceeding. 9 Del.C. § 2211(b) specifies the steps to be taken to collect unpaid service charges, culminating in the sale of and execution of deed of conveyance by the sheriff. It is noted that the statute makes no provision for judicial proceeding or hearing at any stage. *Cf. Brown v. Federal National Mortgage Association, supra; Gelof v. First National Bank of Frankford, supra*; annotation in 1 *L.Ed.2d* 1626–33. Moreover, the statute merely provides for conveyance of title "as if the same were executed by the owner thereof." Cf. *Shockley v. Abbott Supply Company,* Del.Supr., 135 A.2d 607 (1957).

I conclude that the steps specified in § 2211(b) are requisite to the sale of the property under the procedure specified in that section. The failure of the county government to validly levy the assessment, which is one of the steps which must precede the sale, renders the sheriff's sale invalid. In view of this conclusion it is unnecessary to consider the other issues raised by the parties. In summary, the county sale does not affect this mortgage foreclosure.

The lien of New Castle County for the service charges remains effective against the property as provided in 9 Del.C. § 2211(a).

Since the sale was invalid, defendant Goldstein has no interest in the property. Therefore, he is entitled to have the default judgment against him nullified and to be dismissed as a defendant.

Plaintiff shall submit an appropriate order upon notice or consent.