# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARTHA BEARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C. A. No. 2023-0027-LM |
| | ) | |
| ANGELA DAVIS, Administrator of the | ) | |
| Estate of Moses A. Brunson, Jr., | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE'S POST-TRIAL FINAL REPORT

Final Report: January 31, 2024
Date Submitted: October 10, 2023

Martha Beard, New Castle, DE; *Petitioner, pro se*

Angela Davis, Baltimore, MD; *Respondent, pro se*

MITCHELL, M.

This is a Quiet Title action where the petitioner, Martha Beard, seeks to add her name to the deed of the home she's lived in for almost 50 years using adverse possession. Her brother purchased the home with his GI bill for the family and has never lived in the home. Beard moved into the home with their mother and cared for her until she passed away. Some 20 years later, Beard, 73, continues to live in the home. The home is currently facing foreclosure and the Superior Court action awaits, pending this decision.

The brother died intestate in 2020 with the house in his name. He is survived by the respondent, Angela Davis, of Baltimore, Maryland. She contests her aunt's ownership of the home, not necessarily to take possession of it, but to keep it in her lineage for her children. Her position is complicated by the pending foreclosure because it is not clear whether Davis can save the home if she remains entitled to the home as sole owner. Beard believes the bank will negotiate the foreclosure with her as the record owner and occupant of the home. She believes that because she is a senior, she will be eligible for certain programs to help stop the foreclosure.

I am presented with the decision of whether Ms. Beard has an ownership interest in the place she has called home for almost 50 years. For the reasons noted in my explanation below, I recommend that Ms. Beard's petition for quiet title be dismissed. This is my final report.

## I.       Background[1]

Moses A. Brunson Jr. ("Brunson") purchased the home on 113 Karlyn Drive in New Castle, Delaware 19720 (the "Home" or "Property") in 1974 using his GI Bill.[2] Following the purchase, Rachel Brunson ("Mother Brunson") lived there with Brunson's two sisters, Mary and Martha, Mary's three daughters; Mary's two sons; and Martha's two children—Demetrious and Charisse.[3] They all moved into the house together in 1974. Mother Brunson paid the mortgage and the bills were split. The family pitched in with Beard and her children as primary caregivers for Mother Brunson who became blind and bedridden.[4]

Many family members have lived in the Home and had come to know it as the family home.[5] Over the years, a host of Brunson's cousins and other family members have stayed in the Home when they needed a place to live.[6] They believe Brunson had always intended it to be a place where the family could live.[7]

---

[1] The facts in this report reflect my findings based on the record developed at trial on October 10, 2023. I grant the evidence the weight and credibility I find it deserves. Citations to the trial transcripts are in the form "Tr. __," and citations to the Docket in the form of "D. I.__" for the Docket Item number.

[2] Tr. 26:15-21.

[3] Tr. 6:7-12; Tr. 15:1-5.

[4] Tr. 14:11-15:23.

[5] Tr. 17:21-18:5; Tr. 7:9-14.

[6] Tr, 17:19-18:5; Tr. 20:4-7.

[7] Tr. 16:20-23.

Brunson never lived in the Home.[8] Instead he lived in Middletown, Delaware.[9] He would occasionally visit the Home. His daughter—the respondent, Angela Davis, recalls coming to the home and visiting some summers.[10] She testified that she visited every summer from the time she was five until she was sixteen.[11] After visiting with her maternal grandmother in Wilmington, she would come to the home and visit her father's side of the family.

Mother Brunson lived in the home from 1974 until her death in 1995.[12] Following her death, Brunson paid the mortgage until it was paid in full while Beard and her family remained in the home. After her brother passed away, Beard continued to pay the annual taxes. Davis recalls that when her grandmother passed away in 1995, her father told her mother that when he died, he wanted the Home to go to his daughter.[13] Then—she didn't want the home because she felt like she would have to "fight two aunts" and "all of [her] cousins because they all lived there."[14]

---

[8] Tr. 15:14-18; Tr. 31:4-22.

[9] *Id.*

[10] Tr. 37:8-23.

[11] *Id.*

[12] Tr. 15:19-23.

[13] Tr. 36:15-24.

[14] Tr. 37:1-7.

In 2015, Beard suffered a serious injury which required her to have her toe amputated.[15]  As a result of the injury, in 2016, she received over two hundred thousand dollars.[16]  Beard told her brother that she would use the money she received from her lawsuit to put "back into [their] home;" and she did.[17]  She used over one hundred thousand dollars, almost half of the money to remodel the Home.[18]  She made "everything new inside the home,"[19] adding a new half-bath, updating the electrical system (from fuses to breakers), and installing a new cement driveway.[20] She also removed some trees from the property.[21]

Brunson died intestate on July 25, 2020.[22]  He is survived by one daughter, Respondent Angela Davis of Baltimore Maryland.[23]  Angela opened her father's estate on February 26, 2021.[24]  The Register of Wills directed Davis to file an inventory of the Estate on or before May 24, 2021.[25]  The accounting was due

---

[15] Tr. 32:24-33:2.

[16] Tr. 33:17; Tr. 35:2-3.

[17] Tr. 33:2-6.

[18] Tr. 33:5-6.

[19] Tr. 33:12-13.

[20] Tr. 33:17-24.

[21] Tr. 33:21-22.

[22] D.I. 7,8.

[23] D.I. 8; Tr. 38:9-16.

[24] D.I. 8; ROW 176663 IMO BRUNSON, MOSES A (DOD: 7-25-2020).

[25] D.I. 8.

February 24, 2022.[26] To date, Davis has not filed either of the required documents nor has she responded to a statement of claim against the Estate filed in May of 2021 by New Castle County, Department of Community Services.[27]

Davis now claims ownership of the home as the sole heir of Brunson.[28] In the 39 months since her father passed, she has never asked Beard to leave the home or asked her for any money.[29] Since then, Beard has repeatedly reached out to Davis. She claimed Davis was trying to take the Home away from her.[30] But Davis says she was focused on burying her father and "never thinking about the house."[31]

On April 28, 2023, Wells Fargo filed a foreclosure action in Superior court against Davis as heir and as personal representative of her father's estate.[32] The action is representative of a June 1, 2005 Open-End Mortgage that Moses Brunson executed for $82,000 on the Home.[33] Davis was served on June 13, 2023.[34] On July 10, 2023 the Bank informed the Mortgage Mediation Program Administrator that

---

[26] *Id.*

[27] ROW 176663 IMO BRUNSON, MOSES A (DOD: 7-25-2020).

[28] Tr. 38:9-16.

[29] Tr. 39:3-8.

[30] Tr. 38:22-23.

[31] Tr. 38:23-24.

[32] N23L-04-067 DJB (Superior Court action); D. I. 1.

[33] N23L-04-067 DJB; Approximately $95,358.86 remains outstanding on the loan.

[34] As noted in the Bank's request to Remove Case from Automatic Residential Foreclosure Mediation, N23L-04-067 DJB, D. I. 4.

the home was not owner-occupied.[35]  On July 21, 2023, Beard filed her election to participate in the Automatic Residential Mortgage Foreclosure Mediation Program.[36]  Despite Davis's belief that Beard opened her mail[37], the bank had taped the foreclosure notice to the front door of the Home.[38]  Davis has failed to participate in the mediation.[39]  The Superior Court action is stayed pending the outcome of this matter.[40]

## II.    Analysis

Petitioner, Martha Beard—*self represented*, filed this petition[41] requesting her name to be added to the deed. She argues that she should be added under a theory of

---

[35] N23L-04-067 DJB at D. I. 4.

[36] N23L-04-067 DJJ at D. I. 4.

[37] Tr. 40:13-20.

[38] Tr. 43:12-16.

[39] N23L-04-067 DJB at D. I. 9.

[40] *See* N23L-04-067 DJB at D. I. 9 (Occupant Martha Beard appeared for mediation today. She has a Chancery Court petition pending to establish her co-ownership of the property. A hearing was held on October 10, 2023, and a decision is pending. Mediation is continued to allow time for the decision to be rendered, to determine if Martha Beard has any ownership interest in the property. If Martha Beard is found to be a co-owner of the property, she will submit a complete loss mitigation application within 21 days of the decision. If she is not found to be a co-owner of the property, the mediation process will be concluded and a final mediation record will be entered, as Angela Davis has failed to participate in mediation).

[41] Although the docket describes this petition as a partition in kind, and there is a handwritten notation on the petition that this is a partition in kind, the substance of the petition showed the petitioner was seeking quiet title by adverse possession. Despite the mislabeled complaint as a partition petition, I allowed the petition to proceed on the substance of the petition, which was quiet title. *See.* D.I. 20. In similar situations, the Court

adverse possession. On the other side, Respondent opposes Beard's request to be made co-owner of the Home. While Petitioner can prove the elements of Open and Notorious conduct for the statutory period, and that she has made and has been making substantial contribution to the home—even when her brother was alive, Petitioner has an issue with the hostility element of the claim. Here, the adverse possession claim fails for the reasons I describe below.

## A.    Adverse Possession

The elements of adverse possession are well-settled. The claimant must show that it had open, notorious, exclusive and hostile possession of land continuously for the prescribed period.[42] Here, none of the required elements are clearly disputed, but hostility is at issue for Petitioner. The facts required to determine the inquiry overlap, but I address each element individually for context.

### 1.    Continuous

Adverse possession must be continuous for a statutory period of 20 years.[43] It is uncontested that Beard lived in the home for over 40 years, raising her two children in the home, and remaining in the home continuously. Beard's mother

---

may interpret a *pro se* Plaintiff's filings to alleviate the confusion in many *pro se* arguments. This is done in a such a way to avoid prejudice to either party.

[42]*Taraila v. Stevens*, 1989 WL 110545, at *1 (Del. Ch. Sept. 18, 1989); *Suplee v. Eckert*, 160 A.2d 590 (Del. Ch. 1960); Ayers v. Pave It, LLC, 2006 WL 2052377, at *2 (Del. Ch. July 11, 2006).

[43] *Tumulty v. Schreppler*, 132 A.3d 4, 24 (Del. Ch. 2015).

passed away in 1995 leaving Beard and Beard's sister, Mary, there. Beard's sister passed away and many other family members have lived in the home as a place to stay when they needed to "get on their feet," but Beard has stayed in the home since 1995. While it is uncontested that Brunson purchased the home in 1974, Brunson did not live in the home an instead, lived in Middletown, DE. With no contest to her continuous enjoyment of the home, Beard meets her burden for this element.

### 2. Exclusivity

"The exclusivity element does not require absolute exclusivity. 'Exclusive possession means that the adverse possessor must show exclusive dominion over the land and an appropriation of it to his or her benefit.'"[44] Here, Beard was the only consistent adult occupant since her mother died in 1995—for the last 28 years.[45] She testified that she paid the bills, handled repairs and upkeep, and even renovated the property when she received settlement money from an accident in 2016.[46] Although Brunson was alive, the credible testimony shows that Brunson only visited the home periodically. The testimony established that Brunson was known as the record

---

[44] *Id.*

[45] Although her adult children live there, she has effectively replaced her own mother as the matriarch of her family and decision maker for the home. To the extent her deceased sister remained in the home, credible testimony establishes her as her mother's caregiver.

[46] Tr. 33:5-24.

8

owner, but that he purchased the home for "the family." As to exclusivity, I find that Beard meets her burden.

### 3. Open and Notorious

"Open and notorious means that the possession must be public so that the owner and others have notice of the possession. If possession was taken furtively or secretly, it would not be adverse and no title possession could be acquired."[47] Here, Beard's possession was open and notorious. The land consists of a residential property. To remain habitable throughout the statutory 20-year period, a residential home requires upkeep and care. Of which, Beard remained responsible from the time her mother passed away in 1995 until now. She described using over one hundred thousand dollars to remodel the home in 2016.[48] She revamped the home's electrical system, converting the home from fuses to breakers.[49] She also had a "cement driveway put in," trees removed, and installed a new half-bath in the home.[50] Moreover, Beard credibly testified that she takes care of the home with the help of her son.[51]

---

[47] *Bogia v. Kleiner,* 2019 WL 3761647, at *10 (Del. Ch. Aug. 8, 2019) (citations omitted).

[48] Tr. 33:5-6.

[49] Tr. 33:18-20.

[50] Tr. 3320-24.

[51] Tr. 31:9-10.

Testimony further showed that her possession was known by those in her community. She was given the moniker of 'mayor' of the block.[52] She earned the name by her participation in community meetings.[53]

Currently, Beard has inserted herself into the foreclosure process of the home.[54] She has been in contact with the bank and attempting to resolve the debt.[55] Before she found out about the foreclosure action, Beard thought the mortgage on the home had been paid off.[56] If follows, then that Beard has held herself out as responsible for the home. Accordingly, Beard meets her burden, establishing open and notorious conduct for the statutory period.

### 4. Hostility

"Hostility refers to use of property in a manner that is inconsistent with the rights of the true owner, as if the adverse possessor owns the property."[57] "Payment of taxes can give 'rise to a question of fact on who controlled the land,' and is

---

[52] Tr. 25:2-7.

[53] *Id.*

[54] N23L-04-067 DJB, D. I. 4.

[55] Tr. 27:1-2.

[56] Beard credibly testified that sometime after her mother passed in 1995, her brother took over the mortgage from his mother. Tr. 27:11-20. At some point, he told her he was only paying the $1,200 yearly taxes on the home. *Id.* Thus, when her brother passed in 2020, she began paying the taxes on the home, understanding that he would no longer be paying them. Tr. 27:21-28:14.

[57] 2 C.J.S. Adverse Possession § 62.

'ordinarily considered an act of ownership.'[58]  However paying taxes, alone, is not dispositive.[59]

It is undisputed that Beard paid the taxes on the home from the time Brunson passed away in 2020.[60]  However, Beard had her brother's permissive use of the Home.  Beard testified that her brother told her to "stay there and keep up the house."[61]  When asked, Beard denied ever being asked to leave the home by her brother.[62]  Permissive use defeats claims of adverse possession.  As such, Beard cannot meet her burden of establishing the required elements of adverse possession because she cannot claim hostile possession of the Home.  Accordingly, Beard fails to meet her burden.

### III.    Conclusion

It is clear from the testimony that for the past forty-nine years, this home served as the Brunson-Beard family home. Moses Brunson showed from his action that he wanted his sister to continue to live in this home while he was alive. Unfortunately, due to his untimely death, he never memorialized those wishes into a writing that

---

[58] *Est. of Waples v. Burton*, 2020 WL 3286535, at *4 (Del. Ch. June 18, 2020), *adopted sub nom. Waples v. Burton* (Del. Ch. 2020).

[59] *Id.*

[60] Tr. 27:17-20.

[61] Tr.  31:6-7.

[62] Tr. 31:11-13.

would give his sister this home after his death and it is unclear based on the testimony from both parties, whether those were his wishes.

Petitioner was aware that she may have an ownership interest in the home because she has occupied it for almost fifty years, however, adverse possession requires a person's use of the property to be hostile, without the permission of the owner. With this requirement for adverse possession being unmet, Ms. Beard's claim fails, and her petition should be dismissed. This is not a recommendation that Ms. Beard be removed from the place she has called home for almost fifty years. This ruling simply clarifies that she cannot be named as an owner of the Home by this Court.

For the reasons stated above, I recommend the Petition for quiet title by adverse possessions be dismissed as Ms. Beard is unable to plead a claim of adverse possession.

This is my final report, and exceptions may be filed under Court of Chancery Rule 144.

Respectfully Submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

12